# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2697

_____

Robert E. Hunt, Jr.,

      Petitioner-Appellee,

v.

Frank X. Hopkins, Warden of the
Nebraska State Penitentiary,

      Respondent-Appellant.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* District of Nebraska
\*
\*
\*
\*
\*

_____

Submitted:  March 15, 2001

Filed:  September 26, 2001

_____

Before BYE, JOHN R. GIBSON, Circuit Judges, and FRANK,[1] District Judge.

_____

BYE, Circuit Judge.

      Frank X. Hopkins (hereinafter the Warden) appeals a district court[2] order that allowed Robert E. Hunt, Jr., to dismiss his second amended petition for a writ of

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable William G. Cambridge, United States District Judge for the District of Nebraska (now retired).

habeas corpus under 28 U.S.C. § 2254.  The Warden appeals that part of the order granting Hunt leave to file a third amended petition — that will relate back to the date of his second amended petition — after he exhausts state remedies on certain claims included in his first amended petition. We dismiss the appeal for lack of a final, appealable order that would allow us to exercise jurisdiction.

## BACKGROUND

In 1984, a Nebraska jury found Hunt guilty of first-degree murder for strangling and sexually assaulting Beverly Ramspott.  A panel of three judges, see Neb. Rev. Stat. § 29-2520, sentenced Hunt to death.  In 1985, the Supreme Court of Nebraska affirmed Hunt's conviction, but vacated the death sentence.  See State v. Hunt, 371 N.W.2d 708 (Neb. 1985), overruled in part by State v. Palmer, 399 N.W.2d 706 (Neb. 1986).  Hunt was later resentenced to life in prison.

Hunt sought post-conviction relief in state court, raising an ineffective-assistance-of-counsel claim based on concessions and derogatory comments his attorney made during closing argument.  The Supreme Court of Nebraska affirmed the denial of post-conviction relief on June 26, 1998.  See State v. Hunt, 580 N.W.2d 110 (Neb. 1998).

In August 1998, Hunt filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254.  In November 1998, still acting pro se, he filed a first amended petition. Hunt made several claims that he had not raised in his state post-conviction proceedings.[3]  Because Hunt's petition was "mixed" under Rose v. Lundy, 455 U.S. 509 (1982), the district court appointed counsel to assist Hunt in deciding whether to (a)

---

[3]Most notably, Hunt included a prosecutorial misconduct claim that came to light during the postconviction hearing, where the prosecutor admitted that he had directed a law enforcement officer to alter a police report concerning Hunt's confession.

dismiss the petition and exhaust state remedies, or (b) file a second amended petition excluding the unexhausted claims so he could proceed with his exhausted claims.

Hunt initially elected to proceed with his exhausted claims, and filed a second amended petition excluding the unexhausted claims. He also filed a motion to have the second amended petition held in abeyance while he exhausted state remedies. He argued that our decision in Victor v. Hopkins, 90 F.3d 276 (8th Cir. 1996), which held that a district court lacks authority to hold a mixed petition in abeyance while a petitioner exhausts state remedies, did not apply to the second amended petition because it was no longer "mixed." The district court found Hunt's argument persuasive based on the reasoning of Calderon v. United States Dist. Court, which addressed similar circumstances and held that a district court may, but is not required to, stay a fully-exhausted petition. See 134 F.3d 981, 987-88 (9th Cir. 1998). The district court elected not to hold Hunt's second amended petition in abeyance, however, holding that his interests could be protected with actions less drastic than issuing a stay. (For example, Hunt could proceed with his exhausted claims, then seek to add the unexhausted claims when his state court proceedings finished; or Hunt could seek a stay at a later time if it appeared the state proceeding would not be complete before the district court reached a decision on the merits of his exhausted claims.)

After the district court declined to issue a stay, Hunt changed course. He filed a motion to have his second amended petition dismissed without prejudice, noting his intention to refile all claims after exhausting state remedies. Hunt also requested that the filing of his third amended petition be allowed to relate back under Fed. R. Civ. P. 15(c) to his timely-filed petition, to avoid a statute of limitations problem. See 28 U.S.C. § 2244(d) (providing for a one-year statute of limitations).

After noting that Hunt's unexhausted claims may have merit, the district court decided to grant Hunt's motion. The district court dismissed the second amended petition, while at the same time granting Hunt leave to file a third amended petition.

The district court indicated that the "second amended petition is dismissed, without prejudice to filing a third amended petition which will relate back to the date of the second amended petition in order to avoid a potential statute of limitations problem." Finally, the district court indicated that "[t]his case shall be closed for statistical purposes until such time as Petitioner files his third amended petition."

## DISCUSSION

The Warden contends that the district court erred in granting Hunt leave to file a third amended petition. First, the Warden argues that the district court's order thwarts the goals Congress sought to accomplish by enacting a one-year statute of limitations for federal habeas petitions in the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Second, the Warden argues that the district court lacked the authority to grant prospective relation-back relief for a third amended petition, because there was no action to which a third amended petition could relate back once the second amended petition was dismissed.

Hunt responds that the Warden lacks standing to bring this appeal. Hunt contends that, at this juncture, the relief granted by the district court has not caused the Warden a concrete and particularized injury-in-fact, but instead merely presents a conjectural and speculative potential for injury should Hunt ever file a third amended petition. Hunt relies primarily upon a Third Circuit decision which dismissed, for lack of standing, an appeal brought by the Commonwealth of Pennsylvania that challenged the type of prospective relief granted here. See Morris v. Horn, 187 F.3d 333, 338-39 (3rd Cir. 1999) (discussing its earlier unpublished order that dismissed the Commonwealth's appeal for lack of standing). Should we disagree and determine that the Warden has standing, Hunt urges us to hold that the district court had authority to grant prospective relation-back relief, because he argues it is one of the few ways that the choices available under Rose v. Lundy can be preserved in light of AEDPA's new one-year statute of limitations. See Duncan v. Walker, 121 S.Ct. 2120, 2130 (2001)

-4-

(Stevens, J., concurring) ("[E]quitable considerations may make it appropriate for federal courts to fill in a perceived omission on the part of Congress by tolling AEDPA's statute of limitations for unexhausted federal habeas petitions.").

Before we can address either party's contentions, however, we must decide *sua sponte* whether we have jurisdiction to entertain this appeal.  See Krein v. Norris, 250 F.3d 1184, 1187 (8th Cir. 2001).  The issue is whether the State has appealed from a "final decision[] of the district court[]."  28 U.S.C. § 1291.

A district court decision is not final, and thus not appealable, unless there is "some clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as [the court] is concerned, is the end of the case."  Goodwin v. United States, 67 F.3d 149, 151 (8th Cir. 1995) (quotation omitted).  We have held that a dismissal order is presumptively final when the district court does not explicitly grant the plaintiff leave to amend his complaint.  See Quartana v. Utterback, 789 F.2d 1297, 1299-1300 (8th Cir. 1986).  This presumption of finality erodes, however, when the district court clearly manifests an intention to permit the plaintiff's action to continue once new pleadings are filed.  See id.  Thus, when a district court grants a plaintiff leave to amend his pleading, the court signals that the action has not been fully and finally adjudicated on the merits, and that further proceedings will follow.

Here, there is no clear and unequivocal manifestation by the district court that the case was finished.  Just the opposite is true.  The district court explicitly granted Hunt leave to amend by filing a third amended petition in the action.  Furthermore, while the district court dismissed the second amended *petition* without prejudice, it did not dismiss the *action* without prejudice.  Cf. Quartana, 789 F.2d at 199 ("[G]enerally, there is no final order for purposes of appellate review where the complaint, but not the action, is dismissed.") (quoting Local 179, United Textile Workers v. Federal Paper Stock Co., 461 F.2d 849, 850 (8th Cir. 1972)).  The district court's order only closed the case "for statistical purposes until such time as Petitioner files his third amended petition."

-5-

Where the district court's order clearly evinces the lack of finality of a case, as happened here, we simply have no jurisdiction to address whether the district court had authority to act as it did. Our resolution of the propriety of the district court's relief must wait until after Hunt files a third amended petition (if he does) and one of the parties calls upon us to review a "final" decision of the district court.

We dismiss this appeal for lack of appellate jurisdiction.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.