# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2548

_____

Katherine Ann Sapp

*Plaintiff - Appellant*

v.

City of Brooklyn Park; Chisago County; City of Chisago City; City of Forest Lake; City of Hastings; Hennepin County; Isanti County; City of Isanti; Lakes Area Police Department; City of Maplewood; Mille Lacs County; City of Plymouth; City of Rice; Washington County; Michael Campion, in his individual capacity as the Commissioner of the Department of Public Safety; Ramona Dohman, in her individual capacity as the Commissioner of the Department of Public Safety; John and Jane Does (1-200), acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the other governmental agencies; Department of Public Safety Does (1-30), acting in their individual capacity as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety; Entity Does (1-50), including cities, counties, municipalities, and other entities sited in Minnesota

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 15, 2016
Filed: June 17, 2016

_____

Before MURPHY, BEAM, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Katherine Ann Sapp sued various municipalities and their employees under the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-25. The district court[1] dismissed Sapp's claims without prejudice and indicated that Sapp could file an amended complaint if she chose to do so. Sapp instead informed the district court that she intended to stand on her original complaint, and she requested that the court enter final judgment dismissing her case with prejudice. Several days later, Sapp appealed the district court's decision without receiving the judgment she requested. We dismiss this appeal for lack of jurisdiction.

I.

The Minnesota Department of Vehicle Services ("DVS"), a division of the Department of Public Safety ("DPS"), maintains a database of information related to Minnesota drivers. This information includes each driver's name, home address, photograph, eye color, height, weight, social security number, and certain medical information.

Sapp is a Minnesota resident who worked as a 911 dispatcher from 1997 until 2001. In 2001, she married Richard Sapp, a North Branch police officer. Prior to commencing this litigation, Sapp and her husband requested from DPS an audit report of accesses of their driver's license information. This report revealed that Minnesota

_____

[1] The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

-2-

municipal and state personnel had accessed Sapp's personal information approximately sixty times between 2003 and 2012.

Sapp sued several counties, municipalities, and state-government departments whose employees had accessed her data. She claimed that these accesses violated the DPPA, which prohibits the access and use of motor vehicle records "for a purpose not permitted" under the act. *See* 18 U.S.C. § 2724(a). Sapp alleged that she had no interactions with law enforcement that would have justified any of the defendants accessing her data. As a result, Sapp maintained, any access or use of her information was for unlawful purposes. Sapp further alleged that at least some of these accesses were made by Jennifer Rivard, a Brooklyn Park police officer with whom Sapp's husband had a relationship from 1992 until 1997. According to Sapp, Rivard accessed the data of both Sapp and her husband a combined total of thirty-five times following a conversation between Rivard and Richard Sapp in 2003. Sapp claimed that these inquiries, as well as all other inquiries initiated by employees of police departments with which Sapp had no contact, were "for a purpose not permitted" under the DPPA. *See* 18 U.S.C. § 2724(a).

The district court dismissed Sapp's complaint. The court found that all accesses completed prior to November 7, 2010 (including the inquiries allegedly made by Rivard in 2003) were barred by the four-year statute of limitations that applied to Sapp's claims. *See* 28 U.S.C. § 1658(a). With respect to the six accesses occurring within the limitations period, the court found that Sapp had failed to allege facts stating a plausible claim for relief under the DPPA. The court explained that Sapp's allegations, as currently pled, offered only speculation that the accesses were not for a proper purpose under the DPPA. The court made clear, however, that it was dismissing Sapp's claims without prejudice. The court explained that Sapp could "choose to amend [her] Complaint," but cautioned that it reserved the right to award costs and attorney's fees should an amended pleading fail to address the deficiencies the court had highlighted. Sapp did not amend her complaint. Instead, she submitted

a notice to the district court communicating her intent to stand on her initial complaint and requesting that the court enter final judgment dismissing her case with prejudice. Four days after submitting this letter—and without the district court having entered final judgment—Sapp filed this appeal.

## II.

Under 28 U.S.C. § 1291, federal appellate courts have jurisdiction over appeals from final decisions of federal district courts. "A district court decision is not final, and thus not appealable, unless there is 'some clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as [the court] is concerned, is the end of the case.'" *Hunt v. Hopkins*, 266 F.3d 934, 936 (8th Cir. 2001) (alteration in original) (quoting *Goodwin v. United States*, 67 F.3d 149, 151 (8th Cir. 1995)). Although a dismissal order is "presumptively final," we have held that this presumption is overcome when the district court "clearly manifests an intention to permit the plaintiff's action to continue once new pleadings are filed." *Id.* Thus, a plaintiff may not appeal the dismissal of a complaint "when [the] district court grants [the] plaintiff leave to amend his pleading." *Id.* Many of our sister circuits also have adopted this rule. *See, e.g.*, *CompuServe Inc. v. Saperstein*, 172 F.3d 47 (6th Cir. 1999) (unpublished table decision) (recognizing that "when the district court expressly grants the dismissed party leave to amend . . . the dismissal is not final, and that order may not be appealed"); *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (same); *Landmark Land Co. of Okla., Inc. v. Buchanan*, 874 F.2d 717, 720 (10th Cir. 1989) (same); *Anastasiadis v. S.S. Little John*, 339 F.2d 538, 539-40 (5th Cir. 1964) (same); *Richards v. Dunne*, 325 F.2d 155, 156 (1st Cir.1963) (per curiam) (same). Several other circuits have adopted a similar rule but have recognized specific circumstances in which a plaintiff granted leave to amend may appeal despite the absence of a final judgment, such as "upon the expiration of the time allowed for amendment," *see Schuurman v. Motor Vessel Betty K V*, 798 F.2d 442, 445 (11th Cir.1986) (per curiam); *see also Otis v. City of Chicago*, 29 F.3d 1159,

1166-68 (7th Cir.1994) (en banc)(same); *Festa v. Local 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990) (same), or when the plaintiff files a statement of intent to stand on her original complaint, *see Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 278 (3d Cir. 1992).

The district court did not use the precise phrase "leave to amend" when it dismissed Sapp's claims. However, multiple factors in the record lead us to conclude both that the district court intended to grant Sapp leave to amend and that it manifested this intent with sufficient clarity to render its decision non-final. *See Hunt*, 266 F.3d at 936. First, the district court noted in its memorandum opinion that it was dismissing Sapp's claims "without prejudice" and that Sapp could "choose to amend the Complaint." Because the period to amend as a matter of course had expired, Sapp could amend her complaint only if she had either the permission of the court or the consent of the opposing parties. *See* Fed. R. Civ. P. 15(a)(1), (2). The court's indication that Sapp had a choice regarding whether to amend thus shows that it was granting Sapp leave to amend. Second, following the district court's judgment dismissing Sapp's claims without prejudice, Sapp submitted to the court a request for an entry of final judgment with prejudice. Sapp explained that she had requested that the defendants consent to this request but that they had declined to do so. Sapp's request and the defendants' denial of consent demonstrate that the parties understood the district court's original dismissal not to be a final decision ending the litigation. *Cf. Quartana v. Utterback*, 789 F.2d 1297, 1300 n.2 (8th Cir. 1986) (observing that a party's subsequent motions to vacate and set aside an order revealed an understanding that the order was final). Finally, Sapp's counsel conceded at oral argument that he interpreted the district court's order as providing Sapp with an opportunity to amend her complaint. The record thus demonstrates that the district court's grant of leave to amend was sufficiently clear for the parties to understand that the court would "permit [Sapp's] action to continue once new pleadings [were] filed." *See Hunt*, 266 F.3d at 936. We will not second-guess this understanding in order to overcome an obstacle to our jurisdiction. *See Quartana*, 789 F.2d at 1300 n.2

-5-

(concluding that a party's understanding that a district court order was final "bolstered" the appellate court's similar conclusion).

Nor do we read the district court's warning that filing an amended complaint could result in an award of fees to the defendants as undermining our conclusion that Sapp had been granted leave to amend her complaint. Instead, we interpret this statement merely as a reminder that courts may sanction frivolous pleadings under the Federal Rules of Civil Procedure and that an amended complaint that did not address the court's concerns could have constituted an exercise in such frivolity. *See* Fed. R. Civ. P. 11(c)(3). That the district court urged Sapp to consider this risk when *choosing* whether to file an amended complaint further supports this interpretation of the court's warning.

Despite the district court's invitation, Sapp chose not to amend her complaint. She instead requested that the district court enter final judgment dismissing her case with prejudice, and she then filed this appeal without obtaining such a judgment. We recognize that one of our sister circuits, the Third Circuit, presumably would have overlooked Sapp's failure to obtain a final judgment because she filed a document indicating that she "formally stood on [her] complaint." *See Shapiro*, 964 F.2d at 278. However, we decline to adopt this exception to our rule that a party granted leave to amend her complaint must obtain a final judgment before appealing a district court's dismissal. *See Hunt*, 266 F.3d at 936. As the Ninth Circuit recognized in rejecting the Third Circuit's more flexible standard, a bright-line approach to this issue "requires only a modicum of diligence by the parties and the district court, avoids uncertainty, and provides for a final look before the arduous appellate process commences." *See WMX Techs., Inc.*, 104 F.3d at 1136.

Sapp argues that we should excuse her failure to obtain a final judgment because the district court forced her to decide between appealing the court's dismissal with leave to amend and risking sanctions for filing a frivolous amended complaint.

In support of this argument, she cites our decision in *In re Atlas Van Lines, Inc.*, in which we agreed to consider a plaintiff's original complaint because her amended pleading had resulted from a "Hobson's choice" of either amending or risking the dismissal of her case. *See* 209 F.3d 1064, 1067 (8th Cir. 2000). However, we find unpersuasive Sapp's contention that she faced a similar "Hobson's choice." The principle underlying our decision in *Atlas Van Lines* does not apply to a plaintiff granted leave to amend because such a plaintiff instead may elect to stand on her original complaint and seek a final judgment of dismissal from the district court. *See Jung v. K. & D. Mining Co.*, 356 U.S. 335, 337-38 (1958). Moreover, any delay by the district court in entering the requested judgment will have no effect on Sapp's ability to appeal the court's decision. *See id.* (recognizing that a plaintiff's time to appeal does not begin to run until the district court orders the entry of final judgment). We thus find in Sapp's case no reason to depart from our rule that parties may appeal only the final judgments of district courts. *See Hunt*, 266 F.3d at 936. Because Sapp did not obtain a final judgment following the district court's dismissal of her complaint with leave to amend, we lack jurisdiction over this appeal.

## III.

For the foregoing reasons, we dismiss this appeal for lack of jurisdiction.

_____